# IN THE COURT OF APPEALS OF IOWA

No. 15-1690
Filed November 23, 2016

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**LISA AMY MCDONALD,**
      Defendant-Appellant.

_____

Appeal from the Iowa District Court for Mahaska County, Rose Anne Mefford, District Associate Judge.

The defendant appeals from her conviction and sentence for assault causing bodily injury. **CONVICTION AFFIRMED; SENTENCED AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

Mark C. Smith, State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**POTTERFIELD, Presiding Judge.**

Lisa McDonald appeals from her sentence and conviction for assault causing bodily injury. McDonald maintains she received ineffective assistance from trial counsel. Specifically, she claims counsel was ineffective for failing to object to confusing or misleading jury instructions and for failing to ensure the court's response to the jury's questions was not confusing or misleading. She also asserts that she received an illegal sentence.

**I. Background Facts and Proceedings.**

In August 2014, McDonald was charged by trial information with assault causing bodily injury. She pled not guilty, and the matter proceeded to a trial by jury in July 2015.

At trial, the complaining witness testified that McDonald had been visiting her in her home when the two of them began arguing about damage that had occurred to McDonald's vehicle while the witness was driving it. The witness testified she asked McDonald to leave more than once, but rather than leaving, McDonald "attacked me, started hitting me with her fists and got me in a headlock and was beating on my face and stuff with her fists." The witness stated she was eventually able to grab McDonald's neck, which she did in an attempt to stop the attack. At some point, "[McDonald] finally backed off. . . . I didn't expect it, but she finally started backing off, and it just kind of petered out from that point." After McDonald left the residence, the witness called the police. The police photographed the witness and her injuries—including bruises and small cuts to her head, jaw, and arms—and arrested McDonald.

McDonald testified in her own defense. She stated the witness was actually the aggressor and had choked McDonald until she nearly lost consciousness. McDonald maintained she was justified in her actions, stating:

> I kept, you know, swinging and hoping I would hit because of the size difference, and, you know, I told the cop—the cop said, How many times did you hit [the witness]? I said, If you're being choked, who is sitting there counting how many times you're striking somebody to try to get out of it? You're about blocking it out.

One of the arresting officers also testified. He stated that McDonald was arrested—rather than the complaining witness— because McDonald reported to him that she had only hit the witness one time and that it was in self-defense. The officer did not believe the multiple visible injuries to the witness were consistent with McDonald's statement.

During its deliberation, the jury sent two questions to the judge. The jury asked, "In the definition of 'assault,' should we consider who we believe started the altercation?" and "May the jury review the actual police report?" The court discussed its proposed responses with both parties, and neither objected. The court then provided an answer to the jury, advising it to consider certain specific jury instructions "together with all the instructions." It appears the court transposed its answers to the jury—advising the jury to read the instruction corresponding to question 1 as the answer to the jury's second question and vice versa.

The jury found McDonald guilty as charged, and sentencing was scheduled September 8, 2015.

On Monday, August 31, McDonald's trial counsel filed a motion to withdraw. In it, counsel indicated that he had "engaged in a series of emails with" McDonald the previous day, "wherein it became clear there has been a severe breakdown in communication" such that he did "not feel able to continue representing" McDonald. Three days later, McDonald sent an email to the clerk of court, in which she stated, among other things, "I have no objection to [my attorney] withdrawing from my case. I do not have representative counsel but will be fine with representing myself at my sentencing hearing."

The court held a hearing on the motion to withdraw on Friday, September 4. McDonald did not attend the hearing, relying on the fact that she "provided [her] position to the court by letter." At the hearing, McDonald's trial attorney again expressed his desire to withdraw, explaining:

> On August 30th we exchanged e-mails, several e-mails back and forth, in which the tone from the defendant grew increasingly aggressive to the point where she made some statements that I felt were personal attacks, and it led me to feel uncomfortable continuing to represent her, and that was why I filed the motion to withdraw on the 31st.

The court denied the attorney's motion to withdraw, noting that sentencing was scheduled for the next court day. The court also stated, "I understand there may have been a breakdown, but I am not letting you out of the case prior to sentencing . . . . Unless the defendant hires someone else for the sentencing, which I haven't seen any evidence of that. . . ."

At sentencing on September 8, both McDonald and her attorney spoke on her behalf, stressing the mitigating factors the court should consider. The court

entered judgment and then sentenced McDonald to 365 days of incarceration, which the court suspended, and one year of probation.

On September 15, the court entered a criminal no-contact order, preventing McDonald from having contact with the complaining witness until September 15, 2020. McDonald appeals.

## II. Standard of Review.

We review claims of ineffective assistance de novo. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006).

We review challenges to the legality of a sentence for correction of errors at law. *State v. Sisk*, 577 N.W.2d 414, 416 (Iowa 1998).

## III. Discussion.

### A. Error Preservation.

We first consider McDonald's claim she had a complete breakdown in communication with counsel before sentencing, such that it was as if she was unrepresented, in violation of her Sixth Amendment right to counsel. She maintains she should have been allowed to substitute counsel, and she relies on *State v. Tejeda*, 677 N.W.2d 744, 749–52 (Iowa 2004) as authority.

Unlike the defendant in *Tejeda*, McDonald never requested new counsel. 677 N.W.2d at 749 (finding the defendant preserved the issue by writing "two letters to the court in support of his request," which "sufficiently alerted the trial court of a problem"). She also never complained about a breakdown in communication with counsel. Rather, it was trial counsel who filed a motion to withdraw. When the court held a hearing on the motion, McDonald did not attend. Although she sent an email acquiescing to the attorney's request to

withdraw, she did not request new counsel, and in fact stated she would "be fine with representing myself at my sentencing hearing."

McDonald took no steps to establish a breakdown in communication with her trial attorney, and she did not request new counsel; she may not now complain that she did not receive new counsel before her sentencing hearing. *See, e.g.*, *State v. Boggs*, 741 N.W.2d 492, 506 (Iowa 2007) ("*The defendant must show the grounds to justify substitute counsel.*" (emphasis added)); *Tejeda*, 677 N.W.2d at 750 ("[W]e therefore now explicitly recognize there is a duty of inquiry *once a defendant requests substitute counsel* on account of an alleged breakdown in communication." (emphasis added)); *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

### B. Ineffective Assistance.

McDonald maintains trial counsel was ineffective in failing to ensure the jury instructions and the court's response to the jury's questions were not misleading or confusing. To prevail on a claim of ineffective assistance of counsel, McDonald must prove by a preponderance of the evidence (1) her attorney failed to perform an essential duty and (2) prejudice resulted from the failure. *See State v. Rodriguez*, 804 N.W.2d 844, 848 (Iowa 2011). We look to the cumulative effect of counsel's alleged errors to determine whether McDonald satisfied her burden regarding the prejudice prong. *State v. Clay*, 824 N.W.2d 488, 499 (Iowa 2012). Her claim fails if either element is lacking. *See Everett v. State*, 789 N.W.2d 151, 159 (Iowa 2010). Although we prefer to preserve

ineffective-assistance claims for development of the record, *see State v. Tate,* 710 N.W.2d 237, 240 (Iowa 2006), the record here is adequate for us to decide the claims on direct appeal.

*1. Jury instructions.* McDonald maintains counsel was ineffective for failing to object to the instructions provided to the jury. She maintains they were misleading because the jury was instructed on both specific and general intent.

Even if trial counsel should have objected to the instructions, McDonald cannot establish that she was prejudiced by counsel's inaction. Here, intent was disputed only to the extent of whether McDonald was justified in her actions. McDonald conceded at trial that she had intended to hit or make contact with the complaining witness, testifying:

> Yeah, trying any way I could to hit, because [the witness] is so much taller and stronger than me and with longer arms. You know, a shorter person like me, my arm reach isn't enough. I had to literally jump up and kind of come over to even make a glancing contact. I think that's where the contact with the forehead came from.

McDonald does not explain, and we do not see, how clearer instructions on assault as a specific intent crime would have aided McDonald's defense. *See State v. Pendleton*, No. 13-1647, 2014 WL 6977188, at *5 (Iowa Ct. App. Dec. 10, 2014) ("Neither of those [fighting issues] hinged on the intent element of assault. Clearer instructions on assault as a specific intent crime would not have aided Pendleton's defense.").

*2. Response to jury questions.* Next, McDonald claims she was prejudiced by trial counsel's failure to object to the district court's proposed responses to the jury questions. McDonald does not explain how counsel's

objection would likely have changed the outcome of the proceeding. *See Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2001) (stating a defendant has the burden to demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). And while the court transposed the congruous instructions, it also encouraged the jury to re-read all of the instructions to aid in making its determination.

McDonald has not established that she suffered prejudice from counsel's alleged error.

**C. Illegal Sentence.**

McDonald maintains, and the State concedes, the district court's entry of the no-contact order was in violation of Iowa Code section 664A.5 (2015). Section 664A.5 allows the court to enter a no-contact order "for a period of five years from the date judgment is entered." Here, the court entered judgment on September 8, 2015, but issued a no-contact order that was effective through September 15, 2020.

Because this is in error, we vacate the no-contact order and remand to the district court for the limited purpose of entering a corrected order. A resentencing hearing is not required. *See State v. Hess*, 533 N.W.2d 525, 527 (Iowa 1995) ("The district court may correct a clerical error in a judgment entry through issuance of a nunc pro tunc order. An error is clerical in nature if it is not the product of judicial reasoning and determination." (citation omitted)).

**IV. Conclusion.**

McDonald has not established her defense was prejudiced by counsel's performance, so we affirm her conviction.  We vacate the no-contact order and remand for entry of a new order effective until September 8, 2020.  We otherwise affirm McDonald's sentence.

**CONVICTION AFFIRMED; SENTENCED AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**